¶ JOHN MOORE, the elder, JOHN MOORE the younger, JAMES M'CORMICK, JAMES GIVEN and GEORGE WILSON, Administrators of WILLIAM MOORE, deceased, appellants, *against* GEORGE KLINE, Jun. appellee.

M. obtained judgment, in November, 1808, upon which he issued a *sci. fa.* to *August term,* 1810, to which the plea of payment was put in, and issue joined thereon.   His counsel was appointed president judge, and in 1816 a list of causes in which he had been concerned, and among them this, was certified for a special court.   On this list the words, "*settled says Mr. Duncan,*" were written in the hand-writing of the judge, in the entry of this cause; and again, on another list, certified in 1817, the word "settled." Mr. D. was counsel for the defendant, and these entries were never transferred from the trial lists, but in 1823, they were on motion ordered to be stricken out, and in 1825, a verdict and judgment rendered for the plaintiff.   *Held* that the lien of the judgment remained, and was not postponed to a judgment obtained against the defendant after these entries had been made, and before they had been stricken out.

A trial list, certified under an act of Assembly for holding a special court, forms no part of the *record;* it is the private paper of the judge, which he has a right to do with as he pleases, and the entries made upon it by him, are intended for his own information.

   THIS was an appeal from the decree of the court of common pleas of Cumberland county, distributing the proceeds of the sale of

(John Moore, the elder, John Moore, the younger, James M'Cormick, James Given, and George Wilson, administrators of William Moore, deceased, appellants, *v.* George Kline, Jun. appellee.)

the real estate of *George Kline*, Sen. deceased, made on execution by the sheriff of that county, and upon a rule, brought into court by him for distribution on the 15th May, 1828.

The appellants claimed the money upon a judgment entered against *George Kline*, Sen. in November, 1808.

*A scire facias* issued on this judgment, No. 18, to August term, 1810; in which a rule to plead was entered, on the 10th of October, 1810, and the plea of payment put in, and an issue joined upon that plea.

*James Hamilton*, Esquire, who had been counsel for the plaintiff, was appointed president judge of the ninth judicial district; and upon his appointment, a list of causes in which he was concerned, was made out, in 1816, for a special court to be held by judge Franklin.

This cause was entered on that list, and the words, " *settled says Mr. Duncan*," were marked to the entry of it on the list, in the hand-writing of the judge. Mr. *Duncan* was then the counsel for the defendant, *George Kline.*

On the 20th of March, 1817, the prothonotary certified another list of causes, in which judge *Hamilton* had been concerned, for a special court appointed to be held by judge *Scott*. This cause was again put down on this list, and the word " settled," entered in it in the hand-writing of judge *Scott.*

Neither of these entries were ever transferred; but the certified trial lists remained in the prothonotary's office of the county. On the 15th of May, 1823, a rule, at the instance of the plaintiffs, in the judgment, was obtained " *to shew cause why the last entry made by the court in this cause should not be stricken out, having been made by mistake, and without authority;*" and on the 10th December, 1824, this rule was made absolute. The cause was tried on the 25th August, 1825, and a verdict and judgment in favour of the plaintiffs, for thirteen hundred and twenty-three dollars and sixty-nine and an half cents, were rendered.

*George Kline*, Jun. claimed the money on a judgment of the court of common pleas of Cumberland county, against *George Kline*, Sen. entered the 3d November, 1818, for nineteen hundred and ten dollars.

The decree of the court of common pleas of Cumberland county, was in favour of *George Kline*, Jun. and postponed the judgment of the appellants. The question raised upon the exception to this decree, was as to the effect of the entries made on the trial lists in the suit in favour of the *appellants.*

*Williamson* and *Metzger*, (with whom was *Parker*,) for the appellants, contended, that entries made on the trial lists, and not transferred to the appearance or continuance docket, cannot have the effect of postponing the judgments of the appellants to that of the

(John Moore, the elder, John Moore, the younger, James M'Cormick, James Given, and George Wilson, administrators of William Moore, deceased, appellants, *v.* George Kline, Jun. appellee.)

appellee. They were made by mistake, and as between the parties they are wholly nugatory.

The only ground upon which they can be made to operate in favour of the subsequent judgment creditor, is, that he *may* have advanced his money on the faith of these entries, as evidence of the *satisfaction* of the antecedent judgment. Now if this judgment creditor did so advance his money, and take a judgment for it, he must prove it: and his simple allegation of the fact will not suffice. No direct evidence is attempted on this point, and the existence of the entries on the trial lists will not justify the inference.

There is no proof that he had actual notice of these entries, and the entries themselves do not afford evidence of constructive notice. And, without the one or the other, it is manifest that the subsequent judgment creditor is not prejudiced.

The entries were not *on the record*, nor *of record*. A record is the enrolment of the doings of a court of record. These trial lists were directed by the act of assembly to be made out, and *sent* to the judge. *Purd. Dig.* 337. They were his private papers, and might have been kept or destroyed by him: and in truth, although found in the office, they were never filed or preserved with the care usually taken of records. In the case of *Black* v. *Dabson*, 11 *Serg. & Rawle*, 94, it was decided, that to preserve the lien of a judgment beyond five years after its entry, the *cessat* must be entered *on the record*. It is not enough that it is endorsed on a paper filed in the cause. If this strictness be required to preserve a lien, the same strictness, by a parity of reason, should be required to defeat it: and the entry in the one case, as in the other, must be made *on the record*, to have any effect. *Lesse of Hiester* v. *Fortner*, 2 *Bin.* 40. *Peebles* v. *Reeding*, 8 *Serg. & Rawle*, 496. *Weilder* v. *Farmers' Bank of Lancaster*, 11 *Serg. & Rawle*, 139.

*Alexander* and *Carothers* for the appellees. A record is the evidence of the doings of a court of record, and these entries come within the definition. They are in the hand-writing of the judge, and made by him in court, as evidence of the doings of that court, in the proper case. And it was so treated by the plaintiff himself. No continuances were entered from 1816 to 1823, and the plaintiff's counsel then moved to strike out the *last* entry made by the *court* in this *cause*. At that time *George Kline*, Sen. was dead, and the plaintiff prevailed in his motion, and afterwards obtained a verdict.

But whether the entries be of record or not, is of no consequence. They were made in this cause, and estopped the plaintiff to deny their verity so far as respects subsequent judgment creditors. *Bebee* v. *Bank of N. York*, 1 *John. R.* 546.

To avoid this effect, it was incumbent on the plaintiff to show that the subsequent judgment creditor had notice that the entries were wrong.

(John Moore, the elder, John Moore, the younger, James M'Cormick, James Given, and George Wilson, administrators of Willam Moore, deceased, appellants, *v.* George Kline, Jun. appellee.)

The word " settled," means satisfied. *Berks and Dauphin Turnpike Co.* v. *Myers' Ex'rs*, 11 *Serg. & Rawle*, 123. *Commonwealth* v. *Stoever*, 1 *Serg. & Rawle*, 480. 1 *Phil. Ev.* 80.

The principal must disavow the act of his agent, or it is binding on him. *Bredin* v. *Dubarry*, 14 *Serg. & Rawle*, 27. If therefore these entries were made by consent of the attorney in the cause, his authority to do so, should have been promptly denied. It is against equity, after the lapse of so many years to permit him to do it, to the prejudice of an innocent third person, who subsequently acquired rights.

The appellee confided in this entry, and in faith of its truth his money was advanced. He; by referring to the docket entry would perceive that this cause had gone into the special court, and the act of assembly would inform him that a certified list had been made out: this would put him on enquiry, and would result in a knowledge of the entries made on the trial list. And in point of fact, this was the case, although no direct evidence could be given of it.

The issuing of the *scire facias* did not continue the lien. The *Creditors of Treichler* v. *Bower*, 7 *Serg. & Rawle*, 73.

The opinion of the court was delivered by

Rogers, J.—The act of the 4th April, 1798, prescribes that a judgment shall not continue a lien for a longer term than five years, unless within that time a *scire facias* be sued out by the plaintiff. This *scire facias* was sued out in due time, but it is contended, that notwithstanding the plaintiff has lost his lien, because he has not pursued the remedy pointed out by the act with the requisite diligence. In a case at Philadelphia, not yet reported, the court decided that when a *scire facias* had been issued, but *not returned*, and when it appeared that no steps whatever had been taken to prosecute the suit, that there was such gross negligence, as to amount to an abandonment of the writ. That the mere issuing a *scire facias*, without more, was not sufficient to keep up the lien for an indefinite length of time. That, however, is not the case, and we are unwilling to extend the principle further than is warranted by the terms of the case to which we have referred.

This *scire facias* was issued, returned served, a plea of payment put in, and the cause put to issue, and placed on the trial list from time to time. At a special court held by judge *Franklin*, an entry of " settled," was made on the trial list, at the suggestion, as it appears of Mr. *Duncan*, who, at that time, was the counsul for the defendant. When again put upon the list of the special court, a similar entry was made by judge *Scott*, but at whose instance does not appear—possibly at the instance of the same counsel, or per-

(John Moore, the elder, John Moore the younger, James M'Cormick,
James Given and George Wilson, administrators of William Moore, de-
ceased, appellants *v*. George Kline, Jun. appellee.)

haps caused by a hasty reference to the entry previously made.
The cause appears regularly continued on the docket; nor shall I
stop to inquire when those entries were made, or is it material.
On the 13th May, 1823, the entry " settled," was on motion
stricken out by the court, having been made by mistake and with-
out authority. After this, I can perceive no indication of an aban-
donment of the writ, or any thing that amounts to gross negligence.
When we consider the peculiar situation of this cause, we can be
at no loss to perceive why it was suffered to slumber on the
docket. In all probability neither the plaintiff nor his counsel
were aware of the entry; for if made in his absence, the trial list
would be the last place where he would expect to find it. He
would be guided by the entries made by the prothonotary on his
docket. It appears to me to be dangerous to adopt a latitude of
construction as regards this act, as we would introduce uncer-
tainty, as to what degree of diligence is necessary to continue the
lien of a judgment. Numberless questions will arise from an attempt
to superadd a limitation to the lien of a judgment, not warranted
by the terms of the act itself. Independent of any statutory provi-
sion, the judgment and the lien were co-existent, and it is the same
now, when a *scire facias* has in fact issued within the term of five
years; except in the case of a writ without any return of the she-
riff, and without any steps whatever being taken in prosecution of
the suit.

The entry " settled" generally, or settled says plaintiff's or de-
fendant's attorney, is often made: it is certainly a loose mode of
doing business; but I am not prepared to say it is a nullity, when
on the record. It would perhaps amount to an entry of satisfac-
tion, or a discontinuance. However that might be, I cannot agree
to give the entry, " settled," under the circumstances of this case,
that effect. It is a memorandum on the trial list furnished the
judge of the special court, under the act of 1816, and which forms
no part of the record. The trial list is his own private paper,
which he has a right to do with as he pleases, and which, in fact,
some judges convert, without scruple, to their own private pur-
poses. In practice it is usual in some counties to make out two
two trial lists, one for the court, the other for the bar, and in addi-
tion the prothonotary keeps a minute book, in which he marks the
style of the suit, the proceedings in the cause, comprising the
amendments to the pleadings, the names of the jurors, and the ver-
dict, &c. and these entries he afterwards transfers to the continu-
ance docket. In the trial list furnished the court, the judge makes
his memorandums, which are intended for his own information and
guidance during the term, noting the causes that are continued,
those marked for argument, and when tried, states in short,

(John Moore, the elder, John Moore, the younger, James M'Cormick, James Given, and George Wilson, administrators of William Moore, deceased, appellants, *v.* George Kline, Jun. appellee.)

" tried," and sometimes, though not always, whether the verdict was for the plaintiff or defendant, and the amount of the verdict. Sometimes the judge takes the list with him, sometimes he leaves it in his drawer, and at other times with the prothonotary: and whether he does the one or the other, is more frequently the result of accident than design. That an entry on a paper such as this, should have all the sanctity and inviolability of a record, would, I apprehend, introduce a laxity of practice pernicious in the extreme to the suitors. A record should be fixed and certain, and not depending as to its place, or in any other way, on the whim of any person. It is not my intention to define what in Pennsylvania constitutes a record, but it will be sufficient to shew, that a trial list of the judge does not partake of that character. If this entry be a record entry in this respect, it must be so in all others, and then it would follow, that a judgment entered on the trial list, and not transferred to the continuance docket or any further notice taken of it, would effect subsequent purchasers, and in many cases the utmost degree of diligence on his part would not avail to avoid loss. To what does a purchaser look for the existence of judgments; not surely to the trial list, but to the docket: and if not regularly entered there, it would be contrary to every principle of justice, that he should be injured: for in such case he would have no notice, either express or implied. The advocates of the contrary opinion, seem to me to be carried away with the hardship of the plaintiff's loosing his debt, when he has obtained a verdict and judgment. But is it not much more hard, that the innocent purchaser should bear the loss, when he has taken every pains to inform himself by regular searches in the proper offices. It is the duty of a plaintiff who obtains a judgment, to see that the regular entries are made; and if any loss arises from the default of the prothonotary, it is the plaintiff, from whose neglect, in some measure, it has arisen, who should bear the burthen of a law suit, and not a subsequent purchaser, who had nothing to do with the transaction, and who has taken every pains, by the necessary searches, to inform himself of the existence of liens.

HUSTON, J. and SMITH, J. dissented.

> *Decree of the court of Common Pleas reversed, and*
> *a decree entered for the appellants.*